# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7449 | **DATE** | 2/22/2002 |
| **CASE TITLE** | Steven A. Ehrlich vs. Michelle Mantzke et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER:** Order cause reinstated. Defendants Bratcher and Hougas are dismissed. The Clerk is directed to issue summons to defendants McElroy, Dougherty, Perez, Moffett, Moody, Hughes, Haage, Mantzke, Hinze, Brucker, Jestice and Budz. The U.S. Marshal is appointed to serve defendants, and shall serve them with a copy of the Memorandum Opinion and Order as well as the summons and complaint. The Marshal is directed to request waiver of service in accordance with Fed.R.Civ.P. 4(d)(2) before attempting personal service on defendants.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 25 2002 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEVEN A. EHRLICH, )
)
    Plaintiff, )
) 01 C 7449
v. )
)
MICHELLE MANTZKE, et al., )
)
    Defendants. )

DOCKETED
FEB 1 5 2002

## MEMORANDUM OPINION AND ORDER

CHARLES KOCORAS, District Judge:

This matter comes before the court on the initial review of a pro se civil rights complaint filed by plaintiff Steven A. Ehrlich, an inmate in the custody of the Illinois Department of Human Services (DHS), against several DHS employees.[1] Ehrlich is confined at a facility recently established for the confinement and treatment of persons adjudged to be "sexually violent persons" under the Illinois Sexually Violent Persons Commitment Act (SVPCA), 725 ILCS 207/1 *et seq.* This suit under 42 U.S.C. § 1983 alleges that defendants have violated Ehrlich's rights under the Constitution by searching through his papers, confiscating some materials, and punishing him without due process for possessing certain newspaper clippings.

Under 28 U.S.C. § 1915(e)(2)(B), the court is required to dismiss a suit at any time if the court determines that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant immune from such relief. Although enacted as part of the Prison Litigation Reform Act (PLRA), this

---

[1] The court initially denied Ehrlich's motion for leave to proceed without prepayment of the filing fee and directed him to pay a partial filing fee of $100. After the payment deadline had passed the partial filing fee was paid, but before it had been processed and brought to the attention of the court the court dismissed this suit. The clerk is directed to reinstate the case.

provision empowers the district court to screen complaints filed by prisoners and non-prisoners alike. *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999). Although § 1915(e)(2)(B), unlike 28 U.S.C. § 1915A, does not expressly authorize the court to dismiss individual claims or defendants on these grounds, its pre-PLRA predecessor, 28 U.S.C. § 1915(d), was understood as impliedly granting that power, *House v. Belford*, 956 F.2d 711, 718-19 (7th Cir. 1992), and we believe § 1915(e)(2)(B) does so as well.

Because defendants are not parties to a suit before being served with process, *see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.* 526 U.S. 344, 350 (1999), the rulings set forth in this order are not binding upon them. A defendant may bring an independent motion to dismiss the complaint (subject, of course, to the limitations of Rule 11), notwithstanding the court's finding that the complaint states a claim as to him or her.

Ehrlich states that he has been confined pursuant to the SVPCA following a probable-cause hearing, and is awaiting trial on his indefinite civil commitment to DHS. Because Ehrlich is not serving a penal sentence, Ehrlich's constitutional protections arise either directly under the Due Process Clause of the Fourteenth Amendment, or through other constitutional provisions held to be applicable to the states through the Fourteenth Amendment's Due Process and Equal Protection clauses. Ehrlich is confined in a DHS facility for confinement and treatment of "sexually violent persons," but because he has not been adjudged a "sexually violent person" we assume that his situation is governed by the standards applicable to the conditions of confinement of pretrial detainees, rather than the somewhat different protections applicable to the institutionalized mentally ill under *Youngberg v. Romeo*, 457 U.S. 307 (1982), and its progeny.

Unlike pretrial detainees, persons in Ehrlich's situation are not "prisoners" for purposes of the PLRA.[2] The PLRA's requirement that a prisoner exhaust available administrative remedies before filing suit, 42 U.S.C. § 1997e(a), is inapplicable, as there is no general administrative exhaustion requirement under § 1983. *Patsy v. Board of Regents*, 457 U.S. 496, 501 (1982); *Wudtke v. Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997). Nor is Ehrlich subject to the limitation on claims for emotional or psychological injury in the absence of accompanying physical injury found in 42 U.S.C. § 1997e(e).

The landmark Supreme Court decision of *Sandin v. Conner*, 515 U.S. 472 (1995), is also inapplicable. *Sandin* drastically limited -- to the point of virtually abolishing -- claims by prisoners that state laws and regulations conferred constitutionally-protected liberty interests that could not be taken without due process of law. The Court in *Sandin* reasoned that prison regulations are not intended to confer rights on inmates, and making them enforceable by inmates in federal court discourages the state from enacting regulations limiting the discretion of correctional officers and leads "to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Sandin*, 515 U.S. at 482. The Court concluded that while a state "may, under certain circumstances, create liberty interests which are protected by the Due Process Clause," "these interests will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

---

[2] The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h).

Although the stated purpose of avoiding judicial involvement with the minutiae of day-to-day institutional life would be equally applicable to DHS's non-punitive confinement and treatment facility, the punitive nature of imprisonment was a significant factor in the Court's decision. The Court quoted *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125 (1977), *quoting Price v. Johnston*, 334 U.S. 266, 285 (1948), stating that "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system,'" concluding that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485. Because *Sandin* presupposes penal incarceration, the Seventh Circuit has declined to apply *Sandin* to the discipline of pretrial detainees. *Rapier v. Harris*, 172 F.3d 999, 1002 n.2, 1003 (7th Cir. 1999). We find it inapplicable to detainees confined under the SVPCA. *See Thielman v. Leean*, 140 F.Supp.2d 982, 994 (W.D. Wis. 2001)(finding *Sandin* inapplicable to detainees under Wisconsin's version of the SVPCA).

At this stage of the proceedings, we must assume the truth of the allegations in the plaintiff's complaint. Ehrlich alleges that on May 9, 2001, the residents' rooms were searched. Defendants Moody and Hughes spent more than two and a half hours searching Ehrlich's room. They examined all of Ehrlich's "legal material/documents," reading them as they searched. They confiscated two copies of case reports and never returned them to Ehrlich. Ehrlich states that detainees do not have access to a law library and must rely on whatever copies of materials they have.

The complaint further alleges that, on August 26, 2001, defendants Haage and Mantzke allegedly searched Ehrlich's room. Mantzke went through Ehrlich's "legal material/documents," reading them as she went. They confiscated as contraband copies of newspaper articles "pertaining to sex cases, the [SVPCA], sex laws, etc."

- 4 -

On August 29, 2001, Ehrlich was summoned before the "Behavioral Management Committee" consisting of therapist-defendants Hinze, Brucker, and Jestice. On August 31, Jestice, Ehrlich's primary therapist, informed him that the Committee had met again, had determined that no violation had been found because no regulation prohibited possession of the newspaper articles. Jestice told Ehrlich hat he should not have been transferred to the "General" unit from the "Responsible" unit, which entailed a loss of privileges. Jestice told Ehrlich that when Hinze left the meeting he had told the staff to reduce Ehrlich's status to "General." He told Ehrlich that he would be moved back to the "Responsible" unit that evening.

Nevertheless, Ehrlich remained in the "General" unit. On September 1, a Saturday, defendant Hougas refused to move Ehrlich back to the "Responsible" unit until Tuesday, September 4. On Tuesday Jestice was not available, so Ehrlich was not restored to his proper unit until Wednesday, September 5. Ehrlich complains that "due to the lack of rules, policies, procedures, organization within DHS as well as deliberate indifference to the Plaintiff's well-being," he had to "live out of garbage bags and disorganization for five [5] days" and had to lock-up at 10:00 p.m. instead of 10:45 p.m. He contends that it was known that he was entitled to the higher level of privileges, because that Tuesday he was allowed to attend a cookout for "responsible" residents. On October 18, 2001, all cells were searched. The search of Ehrlich's room took three hours and ten minutes. Defendants read all of Ehrlich's legal materials and confiscated some of them.

## ANALYSIS

As the court reads his complaint, Ehrlich has three basic claims: (1) his transfer to the "General" unit amounted to punishment without due process of law; (2) defendants' reading his papers and confiscating his materials constituted an unreasonable search

and seizure; and (3) defendants' confiscation of Ehrlich's written materials violated the First Amendment.

## I. Punishment and due process

Assuming that Ehrlich is legally in the position of a pretrial detainee, he cannot be punished without due process of law, and this is so regardless of whether state regulations governing disciplinary procedures in the SVP unit gave rise to a protected liberty interest. *Rapier*, 172 F.3d at 1005.[3] In this context, due process implies the following procedural requirements: (1) advance written notice of the charges against the inmate at least twenty-four hours before the hearing; (2) the opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action; and (4) a decision supported by "some evidence" in the record. *Superintendent, Massachusetts Correctional Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

It can be inferred from the complaint that Ehrlich's transfer, coming as it did after the confiscation of materials from his cell and a meeting of the "Behavioral Management Committee," was punitive in its intention and purpose. Nevertheless, assuming that defendants' conduct was intentional, the court finds the deprivation too minimal to amount to a constitutional claim. The deprivation lasted only five days, Ehrlich was not locked in his cell, and was even permitted to join other "responsible" level detainees at a cookout. There is an ancient maxim, *de minimis non curat lex*, "the law cares not for trifles." In an imperfect world, some injuries are too small for courts

---

[3] Although Ehrlich complains of a lack of regulations, there are administrative regulations governing discipline in the facility. *See* "Resident Behavior Management System," 59 Ill. Adm. Code § 299.600 *et seq*. It may be inferred from § 299.670, "Consequences for Rule Violation," that withdrawal or reduction of privileges must be based on a finding by the "Behavior Committee" that a resident has engaged in conduct prohibited by regulation or institutional rule.

to bother with, and this is one of them. We would not go as far as the Fourth Circuit, which has held that slapping a pretrial detainee is a *de minimis* injury not amounting to punishment, *Riley v. Dorton*, 115 F.3d 1159, 1167 (4th Cir. 1997), but it trivializes the Constitution to make a federal case out of a deprivation as slight as this.

Further, even if Ehrlich had a valid claim of punishment without due process of law, defendants would be entitled to qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). For a right to be clearly established, "[t]he contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*, 483 U.S. at 640; *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001).

While it was established that a pretrial detainee could not be punished without due process of law, *see, e.g., Rapier, supra*, 172 F.3d at 1003-04; *Zarnes v. Rhodes*, 64 F.3d 285, 291-92 (7th Cir. 1995), it was not clearly established that the same standards applied to a person in Ehrlich's circumstances. Ehrlich is in custody pursuant to a finding of probable cause to believe he is a sexually violent person, defined by statute as a person, who, among other things, suffers from a mental disorder.[4/] Although committed mentally ill persons, like pretrial detainees, retain a substantive due process right to be free from unnecessary physical restraint, the limitation on the state's right to restrain them has been defined by the bounds of acceptable professional judgment,

---

[4/] "'Sexually violent person' means a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of a sexually violent offense by reason of insanity and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f).

-7-

rather than the procedural due process requirements applicable to those confined for non-therapeutic purposes. *See Youngberg*, 457 U.S. at 321-22.

For the most part, the jurisprudence addressing the conditions of confinement of the institutionalized mentally ill reflects the assumption that the patient is severely impaired, not capable of rational choice and not responsible for his actions. *Youngberg* involved a severely retarded person for whom procedural due process would have been meaningless. The introduction of "behavior modification" programs, with schedules of rewards and punishments applicable to all "patients," in contrast to individualized treatment decisions, has blurred the distinction between punishment and therapy. *See King v. Greenblatt*, 149 F.3d 9, 18 (1st Cir. 1998)("[I]f mental health professionals were to control all decisions, certainty and regularity of sanction imposition would necessarily be swallowed up by *ad hoc* individualized decision making."). The practice of institutionalizing "sexually violent persons," who usually are perfectly functional except for difficulty in controlling their sexual behavior, will lead to further rethinking. But while reductions in privileges for "behavior modification" may arguably be treated as "punishment" for purposes of the Due Process Clause, it cannot be said that it was, or is, clearly established that the sort of limitation of privileges Ehrlich alleges required due process protections.

Accordingly, Ehrlich has no claim for damages arising from this incident. Nevertheless, he may have a claim for injunctive relief. Ehrlich alleges that there are no rules posted regarding what inmates are permitted and what is "contraband." Cmplt. ¶42. He states that inmates are punished for violations of rules of which they were unaware. Cmplt. ¶43. Because the court is required to construe the complaint in Ehrlich's favor, it cannot be assumed that the punishments that may be administered amount to no more than *de minimis* restrictions of privileges. Ehrlich will be permitted

to proceed on a claim for injunctive relief on his claim that punitive sanctions are imposed without due process of law.

## II. Searches

Ehrlich alleges that the defendants' searching and reading his personal papers violates his constitutional rights. In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court addressed objections by pretrial detainees to the conditions of their confinement, one of which was routine "shakedown" searches out of the detainees' view. The Supreme Court found no Fourth Amendment violation, but stated in dicta that "[i]t may well be argued that a person confined in a detention facility has no reasonable expectation of privacy with respect to his room or cell and that therefore the Fourth Amendment provides no protection for such a person." *Id.* at 556-57. Five years later, in *Hudson v. Palmer*, 468 U.S. 517, 526-30 (1984), the Court held that a convicted prisoner has no reasonable expectation of privacy in his cell entitling him to Fourth Amendment protection against unreasonable searches.

The Seventh Circuit's majority opinion in *Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995), assumed that *Hudson* applies to pretrial detainees, although Chief Judge Posner in his separate opinion, *id.* at 152, called it an unsettled question. According to *Bell*, the leading Supreme Court opinion on the rights of pretrial detainees, "even the most zealous advocate of prisoners' rights would not suggest that a warrant is required . . . . Detainees' drawers, beds, and personal items may be searched ...." *Bell*, 441 U.S. at 557. Both *Bell* and *Hudson* reason that prisoners' privacy must yield to the state's paramount interest in security. The state's legitimate interest in protecting society from inmates and inmates from each other applies to pretrial detainees and convicted prisoners alike; "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441 U.S.

at 546. This need to assure security is independent of any punitive purpose, which, according to *Bell* and its successors, serves to distinguish the conditions and treatment permissible for convicted prisoners from that permissible for pretrial detainees. With respect to cell searches, the court can find no grounds for reserving for pretrial detainees any residuum of Fourth Amendment protections denied to convicted prisoners by *Hudson*.

Accordingly, assuming that persons involuntarily confined for non-punitive purposes (including the involuntarily committed mentally disabled and mentally ill) have the same rights as pretrial detainees, Ehrlich has no claim under the Fourth Amendment.

Nevertheless, while searches for security reasons are conclusively presumed to be lawful, the Court in *Hudson* left open the possibility that searches for illegitimate purposes might be actionable outside the Fourth Amendment:

> Our holding that respondent does not have a reasonable expectation of privacy enabling him to invoke the protections of the Fourth Amendment does not mean that he is without a remedy for calculated harassment unrelated to prison needs. Nor does it mean that prison attendants can ride roughshod over inmates' property rights with impunity. The Eighth Amendment always stands as a protection against "cruel and unusual punishments." By the same token, there are adequate state tort and common-law remedies available to respondent to redress the alleged destruction of his personal property.

*Hudson*, 468 U.S. at 530. Ehrlich alleges that on October 18, 2001, inmates' cells were searched for the announced purpose of verifying each inmate's personal property inventory. Defendants allegedly spent more than three hours searching Ehrlich's room, and took more time to search his room than any other. This sufficiently suggests "calculated harassment unrelated to [institutional] needs." *See Scher v. Engelke*, 943 F.2d 921 (8th Cir. 1991)(repeated and disruptive searches for retaliatory purpose violated Eighth Amendment).

While these searches could hardly be called "cruel and unusual," they would not have to be so for Ehrlich to state a claim. Ehrlich may not lawfully be subjected to punishment at all, and "punishment," though not "cruel and unusual punishment," could include the deliberate humiliation of reading through his personal papers for no reason other than the searcher's interest in reading them. *Cf. Houchins v. KQED, Inc.*, 438 U.S. 1, 5 n.2 (1978)("Inmates in jails, prisons, or mental institutions retain certain fundamental rights of privacy; they are not like animals in a zoo to be filmed and photographed at will by the public or by media reporters, however 'educational' the process may be for others.")(citation omitted). "[I]f a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Bell*, 441 U.S. at 539.

Nevertheless, defendants are entitled to qualified immunity here as well. The legal rights of persons in Ehrlich's position are not clearly defined. Assuming that Ehrlich's rights under the Due Process Clause are equivalent to those of pretrial detainees, the court is not aware of any opinion in which searches such as Ehrlich has alleged were found to have violated a detainee's rights. Nor has the court found an opinion addressing this issue in the context of a person with mental illness civilly committed to a state institution. Accordingly, although it is possible that defendants violated Ehrlich's rights, he cannot sue for damages. He may, however, pursue a claim for injunctive relief because it may be reasonably inferred from the three searches alleged in the complaint that there is a reasonable probability that such searches will recur in the future.

## III. Confiscation of materials

Ehrlich complains that defendants Moody and Hughes took two copies of judicial opinions on May 9, 2001, and on August 26, 2001, Mantzke confiscated newspaper articles "pertaining to sex cases, the [SVP] Act, sex laws, etc." Mantzke said that they "concerned sex and/or children" and were contraband. The report of the Behavior Committee, Cmplt. Exh. B, stated that the confiscated materials would be retained.

"`[T]he arbitrary denial of access to published materials violates an inmate's first amendment rights.'" *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996)(*quoting Martin v. Tyson*, 845 F.2d 1451, 1454 (7th Cir. 1988). When a state official engages in a "random and unauthorized" confiscation or theft of property, there is no federal claim under 42 U.S.C. § 1983 if state law provides an adequate remedy. *Murdock v. Washington*, 193 F.3d 510, 512-13 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993). Here, however, it appears that the confiscations were not unauthorized or random. The right of detained persons to possess written materials is not absolute, and First Amendment rights may be reasonably limited by legitimate institutional purposes. *Turner v. Safley*, 482 U.S. 78, 87-91 (1987); *Bell*, 441 U.S. at 550-51. Nevertheless, it is difficult to see what legitimate purpose could be served by the confiscation of newspaper articles or judicial opinions.

Ehrlich has not been adjudged a "sexually violent person," and it appears from the report of the Behavior Committee that he was not receiving treatment, so defendants had no legitimate therapeutic interest in confiscating the materials. It is therefore unnecessary to consider whether a content-based restriction of reading material for therapeutic purposes would survive a constitutional challenge. Ehrlich may pursue this claim, and the court will reserve ruling on whether defendants are entitled to qualified immunity.

## CONCLUSION

Ehrlich will be permitted to seek injunctive relief on his claims that punitive sanctions are imposed without due process of law and that searches exceed what may be justified by legitimate institutional interests. He may proceed on this claim solely against Timothy Budz, Director of the SVP facility, who presumably is responsible for disciplinary policy, the posting of disciplinary rules and guidelines and instructions regarding searching inmates' cells. Ehrlich may seek injunctive and monetary relief against defendants McElroy, Dougherty, Perez, Moffett, Moody, Hughes, Haage, Mantzke, Hinze, Brucker and Jestice on his claim that they confiscated reading matter in violation of the First Amendment. Summons shall issue as to these defendants, the U.S. Marshal is appointed to serve them, and defendants shall be served with a copy of this order with the summons and complaint. Ehrlich's claim of improper disciplinary confinement and restriction of privileges is dismissed, and Bratcher and Hougas, who are named only in connection with this claim, are dismissed as defendants.

_Charles P. Kocoras_
Charles P. Kocoras
United States District Judge

Dated: FEB 2 2 2002